UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Marquette Business Credit, Inc.,

      Plaintiff,

v.                                     Civil No. 08-1383 (JNE/FLN)
                                         ORDER

International Wood, Inc., Sonak
Management LLC, Edward G. Gleason,
and Irwin A. Engelman,

      Defendants.

---

Philip R. Schenkenberg, Esq., and Daniel J. Supalla, Esq., Briggs and Morgan, P.A., appeared for Plaintiff Marquette Business Credit, Inc.

Steven R. Lindemann, Esq., Leonard, Street and Deinard, PA, appeared for Defendants International Wood, LLC, Sonak Management LLC, and Edward G. Gleason.

Prairie A. Bly, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., appeared for Defendant Irwin A. Engelman.

---

      Marquette Business Credit, Inc. (Marquette), brings this action against International Wood, LLC (International Wood),[1] Sonak Management LLC (Sonak), Irwin A. Engelman, and Edward G. Gleason claiming breach of contract and conversion. The case is before the Court on the motions of International Wood, Sonak, Gleason, and Engelman (collectively, Defendants) to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue.[2] For the reasons set forth below, the Court denies the motions.

---

[1]      Although the caption identifies International Wood as "International Wood, Inc.," International Wood stated in its Motion to Dismiss the Amended Complaint that it is misnamed in the caption and that its proper name is International Wood, LLC.

[2]      International Wood, Sonak, and Gleason bring a joint motion while Engelman brings a separate motion.

## I.   BACKGROUND

Marquette is a Minnesota corporation with its registered office in Minneapolis and regional offices in Minnesota, Texas, and California.  Marquette also has loan production offices in several cities, including New York.  International Wood is a Delaware limited liability company that was formed in 2005 to acquire and operate a factory in Weslaco, Texas.  Eighty percent of International Wood is owned by Sonak, a Delaware limited liability company with its principal place of business in New York.  Sonak is owned by Gleason and his wife, both citizens of New York.[3]  The remaining twenty percent of International Wood is owned by Engelman, a citizen of New York.  Gleason is the chairman of the board and chief executive officer of International Wood.  Engelman is the president and chief financial officer of International Wood. Engelman and Gleason reside in New York.

During its operation, the International Wood factory produced wooden slats for window coverings.  International Wood's former customers are primarily located in Texas, Arizona, and New Jersey.  After International Wood acquired the factory, its largest customer was Hunter Douglas, a manufacturer of window coverings.  The main Hunter Douglas facility was located in Weslaco.

In 2006, International Wood sought to refinance its existing debt.  Toward that end, International Wood and Marquette entered into discussions about a lending transaction.  The initial contact between the two entities was between Gleason and Calvin Navatto, a loan officer in Marquette's New York loan production office.  According to Gleason, Navatto contacted him and said that Marquette was a Texas-based bank that was interested in the transaction because Marquette and International Wood were both located in Texas.  Although Navatto was located in

---

[3]     Gleason's wife is not a party to this lawsuit.

New York, Jay Jensen, the regional vice-president of Marquette's Minnesota office, stated in an affidavit that Navatto reported to him and that Marquette's Minnesota office supervised the New York loan production office.  According to Jensen, Navatto transferred the loan to Mike Frodermann for underwriting and presentation to Marquette's Minnesota credit committee. Frodermann was located in Minnesota and also reported to Jensen.  The Minnesota credit committee approved proceeding with the loan.

An affidavit submitted by Marquette vice-president Julie Lovaas states that she was responsible for the loan after it received approval from the credit committee to its closing. Lovaas's affidavit and the accompanying exhibits indicate that she and representatives of International Wood, including Gleason, communicated over the telephone, via e-mail, and by written correspondence during that time.  Lovaas was located in Minnesota, and her e-mail signature block gives the address of Marquette's Minnesota office as her address.  Gleason sent at least one letter to Lovaas at Marquette's Minnesota address in connection with the closing. Gleason submitted an affidavit stating that he participated in loan negotiations through face-to-face meetings with Marquette representatives in New York and telephone conversations with Marquette representatives located in New York and Texas.  In a supplemental affidavit, Gleason stated that representatives of International Wood had contact with Minnesota employees of Marquette over the telephone, via e-mail, and by written correspondence.

The loan closed in New York on August 9, 2007.  According to Lovaas's affidavit, Navatto represented Marquette at the closing, but Lovaas executed the loan agreement in Minnesota on behalf of Marquette.  Lovaas also states that she and Gleason communicated over the telephone on the day of closing.  The parties executed several documents in connection with the closing.  Marquette and International Wood executed a loan and security agreement and

revolving promissory note (loan agreement).  Sonak executed a limited guaranty and a subordination agreement.  Gleason and Engelman each executed a limited guaranty and a validity and support agreement (VSA).  The loan agreement, subordination agreement, VSAs, and limited guaranties all identify Marquette as a Minnesota corporation and include Minnesota choice-of-law clauses.  In addition, the loan agreement, subordination agreement, and limited guaranties include consents to jurisdiction and venue in Minnesota.

Pursuant to the terms of the loan, Marquette provided funding to International Wood on a revolving basis.  The loan was secured by International Wood's inventory and accounts receivable.  The credit available to International Wood (borrowing base) was based on International Wood's eligible inventory and accounts receivable.  The borrowing base therefore changed as the value of the eligible inventory and accounts receivable fluctuated over time.  According to the loan agreement, International Wood was required to send a borrowing base certificate to Marquette when International Wood wanted an advance on its credit.  The loan agreement gave the address of Marquette's Minnesota office as Marquette's address and required International Wood to submit the borrowing base certificate so that it was received by Marquette no later than "12:00 noon, Minneapolis, Minnesota time."  Lovaas instructed Thomas Hickey, International Wood's controller, via an e-mail on the day of closing to send borrowing base certificates to Marquette's "MBC Reporting MN" e-mail address so that Marquette's collateral analyst could access the borrowing base certificates.  The collateral analyst was located in Minnesota.  Lovaas's affidavit states that Hickey e-mailed borrowing base certificates to Minnesota when International Wood wanted to draw on its credit.  The affidavits of Lovaas and Jensen state that Marquette's Minnesota office administered the loan.

On October 16, 2007, Marquette sent a notice of default to International Wood resulting from International Wood's failure to provide audited financial statements to Marquette as required by the loan agreement.  The October 16 notice of default is on letterhead that gave the address of Marquette's Minnesota office as Marquette's address (Marquette-Minnesota letterhead).  On October 23, 2007, Marquette and Defendants executed a temporary forbearance agreement relating to the October 16 notice of default in which one of the conditions for Marquette's forbearance was delivery of the forbearance agreement, after execution by all Defendants, to Marquette by close of business on October 24, 2007.

At the end of 2007, International Wood discovered that it had overstated its accounts receivable from Hunter Douglas.  According to International Wood, the overstatement resulted from billing errors that occurred when International Wood re-worked product for Hunter Douglas and sent out an invoice for the re-worked product without creating a corresponding credit for the returned product.  International Wood notified Marquette of the overstatement.  As a result of this overstatement, Marquette deemed that certain Hunter Douglas receivables were no longer eligible for inclusion in the borrowing base.

On December 19, 2007, Gleason and Lovaas spoke on the telephone regarding International Wood's request for funding in excess of that permitted under the loan documents (overadvance).  After Lovaas received a borrowing base certificate from Hickey later that day indicating that the amount of the overadvance was $668,000, Marquette senior vice-president Raul Booton, who was based in Minnesota, Lovaas, Jensen, and Gleason participated in a telephone call during which Marquette required additional security before providing the overadvance.  Also on December 19, Marquette, International Wood, and Gleason executed a temporary forbearance agreement in which the conditions for Marquette's forbearance included

delivery of the forbearance agreement, after execution by International Wood and Gleason, and delivery of a forbearance guaranty executed by Gleason to Marquette by close of business on December 19.[4]  The December 19 forbearance agreement also required delivery of Sonak's and Engelman's acknowledgments of the December 19 forbearance agreement to Marquette by close of business on December 21 for Marquette's continued forbearance.  The December 19 forbearance agreement is on Marquette-Minnesota letterhead and contains a Minnesota choice-of-law provision.  The forbearance guaranty executed by Gleason contains a Minnesota choice-of-law provision and a clause consenting to jurisdiction and venue in Minnesota.

On December 26, 2007, Marquette and Defendants executed a letter agreement in which Marquette agreed to waive all breaches and defaults of the loan agreement arising from International Wood's transfer of its option to purchase the Weslaco factory to an entity owned by Sonak and Engelman.  Execution of the letter agreement by all Defendants was a condition precedent to Marquette's waiver.  The December 26 letter agreement is on Marquette-Minnesota letterhead.

The parties participated in "work-out" discussions concerning the loan agreement through e-mail and over the telephone between January and March 2008.  These discussions involved Marquette chief executive officer Jim Casper, who was based in Dallas, Lovaas, Jensen, Marquette's Minnesota-based counsel, and Gleason.  Lovaas and Gleason exchanged e-mails during these discussions.  In addition, Marquette and Defendants executed an agreement extending Marquette's December 19 forbearance on January 21, 2008, and a second extension agreement on February 13, 2008.  The January 21 and February 13 extension agreements are on

---

[4]     Gleason contends that Marquette pressured him to sign the forbearance guaranty without reading it and without benefit of counsel.  Gleason does not link this contention to the issues of jurisdiction and venue raised by his motion; the Court therefore declines to address his allegations.

Marquette-Minnesota letterhead.  The execution of each extension agreement by all Defendants was a condition precedent to Marquette's extension of its forbearance.  Marquette also required Gleason to acknowledge his forbearance guaranty on January 21 and February 13.

The work-out discussions broke down in the spring of 2008, and Marquette filed suit on May 20, 2008.  Marquette asserts claims against International Wood for breach of the loan agreement, against Gleason for breach of his forbearance guaranty, limited guaranty, and VSA, against Engelman for breach of his limited guaranty and VSA, and against Sonak for breach of its limited guaranty and subordination agreement.  Marquette also asserts a claim for conversion against Sonak in which Marquette alleges that Sonak has failed to turn payments it received from International Wood over to Marquette in violation of the subordination agreement.

## II.    DISCUSSION

Defendants raise two arguments in support of their motions to dismiss.  First, Defendants contend that the Court lacks personal jurisdiction over them.  Second, Defendants contend that venue in the District of Minnesota is improper.  In the alternative, Defendants move to transfer this action to the United States District Court for the Southern District of Texas.[5]

### A.    Personal Jurisdiction

Marquette asserts that the Court has jurisdiction over Defendants by virtue of the consents to jurisdiction and venue contained in the loan documents.  Marquette also asserts that the Court may exercise jurisdiction over Defendants pursuant to Minnesota's long-arm statute, Minn. Stat. § 543.19 (2006).  Defendants respond that this action falls outside of the scope of the clauses consenting to jurisdiction and venue and, in the alternative, that enforcement of the clauses would be unreasonable even if this action fell within their scope.  In addition, Defendants

---

[5]    Engelman's opening memorandum in support of his motion sought transfer to the Northern District of Texas.  In his reply, he clarified that he seeks transfer to the Southern District of Texas, the District in which Weslaco is located.

contend that they do not have sufficient minimum contacts with Minnesota to permit the Court to exercise jurisdiction over them.  For the reasons explained below, the Court concludes that Marquette has made a prima facie case that the Court may exercise personal jurisdiction over Defendants regardless of whether this action falls within the scope of the clauses consenting to jurisdiction and venue.  The Court therefore declines to determine whether the clauses apply to Marquette's claims.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a prima facie case that the forum state has personal jurisdiction over the defendant.  *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).  A court must view the evidence in the light most favorable to the plaintiff when deciding whether the plaintiff has made the requisite showing.  *Id.*  The court must determine whether the exercise of personal jurisdiction over a non-resident defendant complies with the state long-arm statute, and if so, whether it comports with due process.  *Id.*  Minnesota's long-arm statute, Minn. Stat. § 543.19, confers jurisdiction to the fullest extent permitted by due process.  *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007); *In re Minn. Asbestos Litig.*, 552 N.W.2d 242, 246 (Minn. 1996).  The Court therefore need only consider whether the requirements of due process are satisfied to resolve the jurisdictional challenges.  *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Due process allows a court to exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The defendant's contacts with the state must be such that the defendant "should

reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Unilateral activity by one who claims a relationship with the defendant does not satisfy the minimum contacts requirement.  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Instead, the defendant must act so as to "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.*  "Personal jurisdiction depends upon a 'defendant's contacts with the forum in the aggregate, not individually' and the 'totality of the circumstances.'"  *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997) (quoting *Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995)).  When determining whether it may exercise personal jurisdiction in a contract case, "a court must consider the parties' prior negotiations, contemplated future consequences and actual course of dealings."  *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir. 2001).  A court must also take into account the terms of the contract.  *Id.*

Five factors determine whether the exercise of personal jurisdiction over a defendant comports with due process.  *See Nw. Airlines*, 111 F.3d at 1390.  The factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties.  *Id.*  The last two factors are secondary.  *Id.*

The third factor distinguishes general jurisdiction from specific jurisdiction.  *See Wessels*, 65 F.3d at 1432 n.4.  The defendant's maintenance of continuous and systematic contacts with a state may subject it to the state's general jurisdiction, that is, the state may assert personal jurisdiction over the defendant in a suit regardless of where the cause of action arose.  *See id.*

Specific jurisdiction refers to the state's assertion of personal jurisdiction over a defendant in a suit that arises out of or relates to the defendant's contacts with the state. *See id.* Here, Marquette contends that the Court has specific jurisdiction over Defendants. The Court considers each Defendant in turn.

         *1.*     **International Wood**

International Wood contends that the Court lacks personal jurisdiction over it because it has no customers in Minnesota, has never received any revenue from Minnesota, and has never transacted business in Minnesota. Marquette responds that the Court may exercise jurisdiction over International Wood because International Wood repeatedly contacted Marquette and its employees in Minnesota by negotiating and entering into a contract that resulted in a significant, on-going revolving loan made by a Minnesota company and serviced by its Minnesota office.

The Court first considers the nature and quality of International Wood's contacts with Minnesota. International Wood entered into a loan agreement that required it to send borrowing base certificates to Marquette to obtain advances on its credit. The loan agreement also required International Wood to furnish Marquette with schedules of accounts payable and inventory on a monthly basis and borrowing base certificates "[n]ot less often than weekly." The loan agreement gave the address of Marquette's Minnesota office as Marquette's address, required notices to be sent to that address, and defined the relevant time for receipt of the borrowing base certificates and the timing of International Wood's payments according to "Minnesota time." It also defined "business day" as "any day on which commercial banks in Minneapolis, Minnesota, are open for business." The loan agreement's inclusion of a Minnesota choice-of-law clause, while insufficient on its own to create personal jurisdiction, "is an important factor in determining whether [International Wood] purposely availed itself in [Minnesota]." *See id.* at 1434. Moreover, International Wood cannot reasonably be surprised that it is being haled into

court in Minnesota for an alleged breach of the loan agreement when the loan agreement contains a clause in which International Wood consented to jurisdiction in Minnesota.  In addition, International Wood had repeated contacts with Lovaas, a Minnesota-based employee of Marquette, over the telephone, via e-mail, and by written correspondence that were related to the formation and performance of the loan agreement.  While mail and telephone contacts alone are insufficient to confer personal jurisdiction, they are relevant when determining whether International Wood purposely availed itself of the privilege of doing business in Minnesota.  *See id.*

International Wood had contacts with Minnesota in addition to its execution and performance of the loan agreement.  Specifically, International Wood executed the October 23 forbearance agreement, the December 19 forbearance agreement, the December 26 letter agreement, and the two extensions of the December 19 forbearance agreement.  The December 19 forbearance agreement and December 26 letter agreement include Minnesota choice-of-law clauses.  Finally, International Wood participated in work-out discussions that included Minnesota-based employees of Marquette in the spring of 2008.

The preceding description of the record indicates that International Wood's contacts with Minnesota are not random, fortuitous, or attenuated.  Instead, they evince an intentional and on-going relationship between International Wood and Minnesota-based employees of Marquette. Accordingly, the nature and quality of International Wood's contacts with Minnesota favor the exercise of personal jurisdiction over International Wood.  *See, e.g.*, *St. Jude Med.*, 250 F.3d at 591-93 (finding that contract that "contemplated an ongoing relationship requiring regular communications" between non-resident defendant and resident plaintiff supported the exercise of personal jurisdiction); *Wessels*, 65 F.3d at 1433-34 (finding that corporation's systematic

business relationship with Minnesota resident and numerous mail and telephone contacts supported exercise of personal jurisdiction).

As to the second factor, the quantity of contacts, it is evident from the preceding description of the nature and quality of International Wood's contacts with Minnesota that International Wood's contacts with Minnesota were numerous.  This factor supports the Court's exercise of personal jurisdiction over International Wood.

The Court turns to the relationship between Marquette's cause of action and International Wood's contacts with Minnesota.[6]  In doing so, the Court first addresses International Wood's contention that Marquette's causes of action focus on activities that occurred in Texas, not in Minnesota, because Marquette alleges a fraudulent scheme to conceal International Wood's accounts receivable and inventory.[7]  The Court's review of the Amended Complaint reveals that Marquette alleges that International Wood breached the loan agreement by failing to repay the amounts it owed Marquette under the loan agreement.  Marquette's claim for breach of the loan agreement therefore directly relates to International Wood's contacts with Minnesota.  This factor supports the Court's exercise of jurisdiction over International Wood.

The Court next considers the forum state's interest in the litigation.  International Wood contends that Minnesota has no interest in providing a forum for Marquette because Marquette is

---

[6]     Defendants contend that "[b]ecause the Defendants have no contacts with Minnesota, it follows that there is no relation between any such contacts and Marquette's causes of action."  As illustrated by the Court's description of Defendants' contacts with Minnesota, this argument is without merit.

[7]     Defendants repeatedly characterize Marquette's claims as those of a fraudulent scheme or conspiracy to defraud.  In doing so, Defendants rely heavily on a now-withdrawn discovery motion filed by Marquette in July 2008.  Eight of the nine claims in Marquette's Amended Complaint, however, are straightforward claims for breach of contract and the ninth is a claim for conversion based on Sonak's alleged receipt of funds in violation of the subordination agreement.  The Court declines to read allegations made in a withdrawn discovery motion into the Amended Complaint.

headquartered in Texas and pleaded its complaint so that all of the relevant facts, witnesses, and records are centered in southern Texas.  The Court is not persuaded.  Minnesota has an interest in providing a forum for Marquette—a Minnesota corporation having significant operations in Minnesota—to litigate claims arising out of a loan agreement which was negotiated in part by Minnesota employees of Marquette and serviced by Marquette's Minnesota office.  This factor supports the exercise of jurisdiction over International Wood.

As to the fifth factor, the convenience of the parties, Marquette asserts that all of its records and substantially all of its witnesses are located in Minnesota.  International Wood asserts that all of its records and virtually all of its witnesses are located in Texas.  Whatever inconvenience International Wood may undergo by being required to litigate in Minnesota is equaled by the inconvenience Marquette would undergo by being forced to litigate in another state.  Moreover, Marquette is entitled to select the litigation's forum.  *See Northrup*, 51 F.3d at 1389.  This factor slightly favors Marquette.[8]

International Wood makes additional arguments against the Court's exercise of personal jurisdiction.  First, International Wood contends that none of its representatives entered Minnesota in connection with the loan agreement.  The absence of physical entry into Minnesota is insufficient reason to permit International Wood to avoid the Court's exercise of jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.").  Second, International Wood contends that Marquette approached International Wood rather than International Wood reaching out to Marquette.  Regardless of who initiated the relationship, however, International Wood's active pursuit of a business relationship with

---

[8]     The Court addresses the convenience of the parties in more detail in the context of Defendants' motions to transfer venue.

Marquette that involved repeated communications with Marquette's Minnesota-based employees supports the Court's exercise of personal jurisdiction. *See Wessels*, 65 F.3d at 1433.

The Court concludes that Marquette has made a prima facie showing that International Wood is subject to the specific jurisdiction of the Court. Accordingly, the Court denies International Wood's motion to dismiss for lack of personal jurisdiction.

### 2. *Sonak*

Sonak contends that the Court may not exercise jurisdiction over it because it has never transacted business in Minnesota, it owns no property in Minnesota, and none of its representatives have ever traveled to Minnesota on business. Marquette responds by enumerating Sonak's contacts with Minnesota and asserting that analysis of the five factors demonstrates that the Court may exercise jurisdiction over Sonak.

The Court first considers the nature and quality of Sonak's contacts with Minnesota. In doing so, the Court is mindful that the Eighth Circuit has held that non-resident guarantors of a contractual obligation have had insufficient contact with a forum state to confer jurisdiction. *See Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 573 (8th Cir. 1986) ("The mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation does not subject the guarantors to jurisdiction in Arkansas."). In so holding, however, the Eighth Circuit distinguished cases where courts had exercised personal jurisdiction over non-resident guarantors. *Id.* at 573-74. In the distinguished cases, there was "substantive identity of the guarantors and the corporation whose obligation they guaranteed," "evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals," or "a provision in the guarantee contract or the underlying contract stating that the law of the forum state would control." *Id.* All three of those factors are present with respect to Sonak.

First, there is substantive identity of International Wood and Sonak, which owns eighty percent of International Wood.  Second, the limited guaranty and subordination agreement executed by Sonak were listed as closing requirements in the loan agreement, suggesting that Marquette would not have entered into the loan agreement without Sonak's guaranty and subordination agreement.  Third, Sonak's limited guaranty and subordination agreement each contain a Minnesota choice-of-law clause and consents to jurisdiction and venue in Minnesota, as does the underlying loan agreement.  All of these factors support the Court's exercise of jurisdiction over Sonak.  *Cf. id.*

Sonak had contacts with Minnesota beyond its execution of the limited guaranty and subordination agreement in that it also executed the October 23 forbearance agreement, the December 19 forbearance agreement, the December 26 letter agreement, and the two extensions of the December 19 forbearance agreement.  Sonak's execution of those agreements was required for Marquette's forbearance from exercising its rights under the loan agreement.  Moreover, the December 19 forbearance agreement and the December 26 letter agreement contain Minnesota choice-of-law clauses.  The Court concludes that the nature and quality of Sonak's contacts with Minnesota support the Court's exercise of personal jurisdiction over Sonak.

As to the second factor, it is clear that Sonak had multiple contacts with Minnesota.  This factor favors the Court's exercise of personal jurisdiction over Sonak.

The Court next considers the connection between the cause of action and Sonak's contacts with Minnesota.  Marquette claims that Sonak breached the limited guaranty because Sonak failed to pay the amount due pursuant to the limited guaranty after receiving notice of International Wood's default.  Marquette also asserts claims for breach of the subordination

agreement and conversion against Sonak in which Marquette alleges that Sonak has received payments from International Wood and has refused to turn those payments over to Marquette in violation of the subordination agreement.  These claims are directly related to Sonak's contacts with Minnesota.  This factor supports the Court's exercise of personal jurisdiction over Sonak.

As to the fourth factor, as discussed with respect to International Wood, Minnesota has an interest in providing a forum for Marquette to litigate claims against Sonak, a non-resident.  This factor weighs in favor of exercising jurisdiction over Sonak.

Finally, with respect to the fifth factor, it appears that Sonak will be inconvenienced regardless of whether the suit proceeds in Minnesota or in Texas because Sonak is a Delaware corporation having a principal place of business in New York and whose members are residents of New York.  Moreover, a plaintiff is normally entitled to select the litigation's forum.  *See Northrup*, 51 F.3d at 1389.  This factor supports the exercise of jurisdiction over Sonak.

The Court concludes that Marquette has made a prima facie showing that the exercise of personal jurisdiction over Sonak comports with due process.  The Court therefore denies Sonak's motion to dismiss for lack of personal jurisdiction.

### 3.  *Gleason*

Gleason contends that he has never transacted any business in Minnesota, owns no property in Minnesota, has never traveled to Minnesota in connection with any of the events giving rise to this lawsuit, and has not been to Minnesota for more than ten years.  Marquette responds with a list of Gleason's contacts with Minnesota and asserts that analysis of the five factors demonstrates that the Court may exercise jurisdiction over Gleason.

When considering Gleason's contacts with Minnesota, the Court is mindful that a corporate officer's "contacts with a forum state are not to be judged according to the corporation's activities there; rather, each defendant's contacts with the forum state must be

assessed individually." *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996), *aff'd*, 130 F.3d 1305 (8th Cir. 1997).  Here, the VSA executed by Gleason identifies him as an officer of International Wood and indicates that he entered into the VSA "to induce [Marquette] to make advances and extend other financial accommodations to or for the account of [International Wood] under the Loan Agreement."  Gleason's VSA and limited guaranty are listed as closing requirements in the loan agreement and contain Minnesota choice-of-law clauses.  The limited guaranty contains a consent to jurisdiction and venue in Minnesota, as does the underlying loan agreement.  The nature and quality of these contacts support the Court's exercise of jurisdiction over Gleason.  *Cf. Ark. Rice Growers*, 797 F.2d at 573-74.

Gleason engaged in contacts with Minnesota in addition to his execution of the VSA and limited guaranty.  He communicated with Lovaas regarding the formation and performance of the loan agreement over the telephone, via e-mail, and by written correspondence.  He executed the loan agreement and subsequent agreements on behalf of International Wood and spoke with Lovaas over the telephone on the day of closing.  Gleason called Lovaas in Minnesota on December 19, 2007, to request the overadvance for International Wood.  It was this request that resulted in Gleason's execution of the December 19 forbearance agreement, which contains a Minnesota choice-of-law clause, and the forbearance guaranty, which contains a Minnesota choice-of-law clause and a clause in which he consented to jurisdiction and venue in Minnesota. Gleason also executed the October 23 forbearance agreement, the December 26 letter agreement, the two extensions of the December 19 forbearance agreement, and the two acknowledgements of his forbearance guaranty.  Gleason's execution of those agreements was required for Marquette to forbear exercising its rights under the loan agreement.  Finally, Gleason participated in the work-out discussions with Minnesota-based employees of Marquette.  The

Court concludes that the nature and quality of Gleason's contacts with Minnesota support the Court's exercise of personal jurisdiction over him.

As the preceding description makes clear, Gleason had numerous contacts with Minnesota.  The quantity of Gleason's contacts with Minnesota therefore favors the Court's exercise of personal jurisdiction over him.

The Court next considers the connection between the cause of action and Gleason's contacts with Minnesota.  Marquette asserts claims against Gleason for breach of the limited guaranty and breach of the forbearance guaranty.  Marquette alleges in its Amended Complaint that Marquette has provided notice of International Wood's default to Gleason and Gleason has failed to make the payments due under the guaranties.  These claims are directly related to Gleason's contacts with Minnesota.

Marquette also asserts a claim against Gleason for breach of his VSA.  Gleason characterizes Marquette's claims against Gleason as common-law tort claims because Marquette alleges fraud and misrepresentation by Gleason or Hickey in its claim for breach of the VSA. Gleason contends that he could not have anticipated litigating an action in Minnesota that includes claims of fraud and misrepresentation.  Based on its review of the VSA, the Court is not persuaded.  Gleason represented in paragraph 9 of the VSA that to the best of his knowledge, the present and future accounts securing the loan were valid and arose out of a bona fide sale; that proper entries had been made in International Wood's books; and that the amount of the accounts represented by International Wood as owing by customers was correct.  The VSA states that "if any of the representations set forth [in] Paragraph 9 are materially false or misleading when made, [Gleason] shall be liable to [Marquette] for [Marquette's] actual damages" and that "[Gleason] shall hold [Marquette] harmless for any actual loss, cost, expense, claim and damage

. . . arising out of fraud or misrepresentation made by [Gleason] (or by any employee . . . of [International Wood] under the direct supervision of [Gleason]) with respect to the Collateral or [International Wood's] financial statements."  Given this language, Gleason could have reasonably anticipated that any claim for breach of the VSA would necessarily include allegations of fraud and misrepresentation.  Moreover, in light of the clauses consenting to jurisdiction and venue in Minnesota in the underlying loan agreement and Gleason's limited guaranty, as well as Gleason's additional contacts with Minnesota, Gleason could have reasonably expected to be sued for breach of the VSA in Minnesota.  *See Nw. Airlines, Inc.*, 111 F.3d at 1391 (consent-to-jurisdiction clause in one of three contracts at issue and other contacts with forum state showed defendant purposefully availed itself in the forum state and could have reasonably expected to be sued there).  The Court concludes that Marquette's claim for breach of the VSA is directly related to Gleason's contacts with Minnesota.

As to the fourth and fifth factors, these factors support the Court's exercise of jurisdiction over Gleason, a New York resident, for the same reasons as those given with respect to Sonak. The Court concludes that Marquette has made a prima facie showing that Gleason's contacts with Minnesota support the exercise of specific jurisdiction over him.  The Court denies Gleason's motion to dismiss for lack of personal jurisdiction.

### 4.    *Engelman*

Engelman contends that the Court does not have jurisdiction over him because he has never lived or worked in Minnesota, does not own or lease property in Minnesota, has only been to Minnesota one time, fifteen years ago, for reasons unrelated to the present matter or to International Wood, does not maintain an office to receive process in Minnesota, and does not employ anyone in Minnesota.  Engelman also contends that his "isolated contact" with Marquette through the execution of the limited guaranty is insufficient to support the Court's

exercise of jurisdiction over him.  Marquette responds by enumerating Engelman's contacts with

Minnesota and asserting that due process permits the Court to exercise jurisdiction over

Engelman.

Engelman executed a limited guaranty and VSA in connection with the loan agreement.

There is substantive identity between International Wood and Engelman, who owns twenty

percent of International Wood.  The VSA states that Engelman entered into the VSA "to induce

[Marquette] to make advances and extend other financial accommodations to or for the account

of [International Wood] under the Loan Agreement."  The limited guaranty and VSA are listed

as closing requirements in the loan agreement.  Engelman is identified as an officer of

International Wood in the VSA.  The limited guaranty and VSA contain Minnesota choice-of-

law clauses.  The limited guaranty contains a clause consenting to jurisdiction and venue in

Minnesota, as does the underlying loan agreement.  While the VSA does not contain such a

clause, Engelman could have reasonably expected to be sued for breach of the VSA in Minnesota

given its close relation to the loan agreement and limited guaranty.  *See id.*  The nature and

quality of these contacts support the Court's exercise of jurisdiction over Engelman.  *Cf. Ark.*

*Rice Growers*, 797 F.2d at 573-74.

Moreover, Engelman had contacts with Minnesota in addition to his execution of the

limited guaranty and VSA.  He executed the October 23 forbearance agreement, the December

19 forbearance agreement, the December 26 letter agreement, and the two extensions of the

December 19 forbearance agreement.  Engelman's execution of those agreements was required

for Marquette to forbear exercising its rights under the loan agreement.  The Court concludes that

the nature and quality of Engelman's contacts with Minnesota support the Court's exercise of

jurisdiction over him.

As to the second factor, Engelman had multiple contacts with Minnesota.  The quantity of Engelman's contacts with Minnesota supports the Court's exercise of personal jurisdiction over Engelman.

The Court next considers the connection between the cause of action and Engelman's contacts with Minnesota.  Marquette asserts claims against Engelman for breach of his limited guaranty and VSA.  For the reasons given with respect to Gleason, the Court concludes that Marquette's claims against Engelman are directly related to his contacts with Minnesota.

As to the fourth and fifth factors, these factors support the Court's exercise of jurisdiction over Engelman, a New York resident, for the same reasons given with respect to Sonak.[9]  The Court concludes that Marquette has made a prima facie showing that the exercise of personal jurisdiction over Engelman comports with due process.  The Court therefore denies Engelman's motion to dismiss for lack of personal jurisdiction.

**B.**     **Venue**

Defendants move to dismiss this action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure on the ground that venue is not proper in Minnesota or, in the alternative, to transfer venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) (2006).

*1.*     *Defendants' Motions to Dismiss*

A court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which the case could have been brought."  28 U.S.C. § 1406(a) (2006).  In a civil action where jurisdiction is founded solely on diversity, venue is proper in "a judicial district in which a

---

[9]     Engelman asserts that Marquette, a Minnesota corporation, is "not even a resident of Minnesota," apparently on the ground that Marquette's principal place of business is located in Dallas.  He cites no authority for this proposition.  The Court declines to conclude that an entity incorporated in Minnesota is not a resident of Minnesota.

substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C.
§ 1391(a)(2) (2006).

Defendants assert that a substantial part of the events giving rise to Marquette's claims
occurred in Texas. When determining whether venue is proper, however, the Court does not ask
which district among two or more potential forums is the "best" venue. *Pecoraro v. Sky Ranch
for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003). Instead, the Court asks whether the district
selected by the plaintiff had a substantial connection to the claims, regardless of whether other
forums had greater contacts. *Id.*

Here, Minnesota-based employees of Marquette, a Minnesota corporation, approved the
loan and directed the loan from its approval by the credit committee to its closing. The record
shows that numerous communications concerning the formation and performance of the loan
agreement took place between Minnesota-based employees of Marquette and employees of
International Wood. Marquette executed the loan documents in Minnesota and administered the
loan from Minnesota. International Wood sent its borrowing base certificates to Minnesota. The
Court concludes that Minnesota has a substantial connection to the claims asserted by Marquette
such that venue is proper here. The Court therefore denies Defendants' motions to dismiss for
improper venue.

### 2. *Defendants' Motions to Transfer*

Defendants alternatively seek to transfer this action to the Southern District of Texas
pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and
witnesses, in the interest of justice, a district court may transfer any civil action to any other
district or division where it might have been brought." The party seeking a transfer ordinarily
bears the burden of establishing that a transfer is warranted. *Terra Int'l, Inc. v. Miss. Chem.*

*Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).  A motion to transfer an action to another district should be denied unless the balance of factors strongly favors the moving party.  *See Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).  "Transfer should also be denied if the factors are evenly balanced or weigh only slightly in favor of transfer."  *Id.*  The decision whether to transfer an action is within the discretion of the district court.  *See Terra Int'l*, 119 F.3d at 691.  In determining whether transfer is appropriate, the Court must consider the convenience of the parties, the convenience of the witnesses, and the interests of justice, along with any other relevant factors.  *Id.*

The parties do not dispute that this action could have been brought in the Southern District of Texas.  The Court therefore begins with the convenience of the parties.  Marquette contends that all of its records and substantially all of its witnesses are located in Minnesota. Engelman contends that the Southern District of Texas is a convenient forum for Marquette on the ground that its principal place of business is located in Texas and Marquette's employees assigned to International Wood regularly travel to Texas.  The Court is not persuaded that the Southern District of Texas is a convenient forum for Marquette.  Although Marquette does maintain a regional office in Dallas, the evidence is undisputed that many of Marquette's employees that were involved with the formation and administration of the loan, including Lovaas, Frodermann, Booton, and Jensen, are located in Minnesota.  With respect to Engelman's assertion that employees of Marquette assigned to International Wood travel to Texas on a regular basis, the affidavit he cites establishes only that Lee Anderson, a national field exam manager for Marquette, traveled to International Wood's Weslaco factory several times between January and July 2008.  Moreover, Marquette's Dallas office is approximately 500 miles from Weslaco and approximately 240 miles from Houston, the nearest city to Dallas in which a U.S.

Courthouse for the Southern District of Texas is located.  In addition, the record indicates that all

of Marquette's documents relating to the loan agreement are located in Minnesota.  Based on

these facts, the Court concludes that the District of Minnesota is a convenient forum for

Marquette, and that the Southern District of Texas is not.

Defendants contend that the Southern District of Texas is more convenient for them

because all of International Wood's documents and virtually all of its witnesses are located in

that district.  While the Southern District of Texas is a more convenient forum for International

Wood because its principal place of business is in Weslaco, as are its records, the Court

questions whether the Southern District of Texas is a more convenient forum for Sonak, a

Delaware corporation having a principal place of business in New York, or for the individual

guarantors, both residents of New York.  Even if the Court assumes that the Southern District of

Texas is more convenient for all Defendants, they have not persuaded the Court that a transfer to

the Southern District of Texas would result in anything more than a shift of the inconvenience

from Defendants to Marquette.  This factor weighs in favor of maintaining this action in

Minnesota.  *See Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856,

862 (D. Minn. 2000).

The Court turns to the convenience of the witnesses.  When evaluating this factor,

relevant considerations include the number of essential non-party witnesses, their location, and

the preference of courts for live testimony.  *See Graff*, 33 F. Supp. 2d at 1121.  This factor does

not turn, however, on a contest between the parties as to which presents a longer list of witnesses

located in the proposed transferee district.  *Id.* at 1121-22.  Instead, the party seeking the transfer

must clearly specify the essential witnesses to be called and make a general statement of what

their testimony will cover.  *Id.* at 1122.  A court must examine the materiality and importance of

the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum.  *Id.*

Marquette identifies as witnesses several of its Minnesota-based employees, including Lovaas, Jensen, Booton, and Frodermann.  Marquette contends that these witnesses will testify about the loan's underwriting, approval, and administration, the discrepancies in borrowing base certificates, the discussion on December 19 relating to the forbearance agreement and forbearance guaranty, and the work-out discussions.  Defendants identify as witnesses International Wood's former controller, assistant controller, office assistant, customer service representative, and shipping manager.  According to Defendants, International Wood no longer employs these witnesses and has no control over them.  Defendants describe the testimony of these witnesses as encompassing International Wood's accounting systems, shipping systems, and shipping procedures, as well as the origin of the discrepancies in the Hunter Douglas receivables.  Because Defendants have specified several non-party witnesses who are not subject to the Court's subpoena power and made a general statement of what their testimony will cover, the Court concludes that this factor favors transfer to the Southern District of Texas.

Finally, the Court addresses the interests of justice.  Relevant considerations under this factor include the plaintiff's choice of forum, the relative ability of the parties to bear the expense of litigating in a distant forum, obstacles to a fair trial, and the advantages of having a local court determine questions of local law.  *Terra Int'l*, 119 F.3d at 66; *Graff*, 33 F. Supp. 2d at 1122.  Marquette's choice of this District as its forum is entitled to considerable deference.  *See Terra Int'l*, 119 F.3d at 695.  All of the contracts contain Minnesota choice-of-law clauses, weighing in favor of maintaining venue in this District.  Defendants contend that it is less of a burden for Marquette to litigate in Texas than for Defendants to litigate in Minnesota because

Marquette is a large financial institution while International Wood is a corporation with little income and the guarantors are two individuals and a limited liability corporation owned by Gleason and his wife.  Without evidentiary support, the Court is unable to assess Defendants' assertion regarding the parties' relative abilities to litigate in Minnesota or Texas.  Moreover, Defendants do not explain why the Southern District of Texas is any more economical than the District of Minnesota for Sonak, Gleason, and Engelman.

Defendants assert that they will be significantly hampered in presenting a defense to Marquette's claims because their non-party witnesses are outside of the subpoena power of the Court.  The Court recognizes the preference for live testimony at trial, but concludes that in light of the factors favoring denial of transfer, this preference does not warrant a transfer of venue to the Southern District of Texas.  If Defendants are unable to secure the attendance of International Wood's former employees or other non-party witnesses at trial, they may rely on transcripts or video of the witnesses' depositions.  *See Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1068 (8th Cir. 1986) ("[W]e agree with the district court that the alternative of using depositions of key witnesses provides adequate opportunity for [plaintiffs] to have their fair day in court.").  Moreover, the Court notes that each Defendant executed at least one contract consenting to venue in Minnesota.  In light of these facts, the Court is not persuaded that the interests of justice require transfer to Defendants' preferred venue.

Finally, Defendants contend that a local tax proceeding pending in Texas state court may have significant implications for Marquette's claims and the liability of Engelman and Gleason because the tax proceeding constitutes a competing claim on International Wood's inventory. Defendants further contend that a federal court in Texas is better positioned than a federal court in Minnesota to avoid inconsistent outcomes between this action and the state tax proceeding,

but offer no explanation as to why.  Under these circumstances, the Court concludes that the pending tax proceeding does not support transfer of this action to the Southern District of Texas.[10]

In summary, Defendants have not met their burden of establishing that the balance of factors justifies transfer of this action to the Southern District of Texas.  Accordingly, the Court denies Defendants' motions to transfer venue.

## III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    The motion of International Wood, Sonak, and Gleason to dismiss for lack of personal jurisdiction and improper venue or to transfer venue [Docket No. 68] is DENIED.

2.    Engelman's motion to dismiss for lack of personal jurisdiction and improper venue or to transfer venue [Docket No. 71] is DENIED.

Dated: March 27, 2009

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[10]    Defendants also contend that transfer is warranted because the Court may need to inspect International Wood's inventory.  The Court is not convinced that an inspection is so likely as to justify transfer.