UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Marquette Business Credit, Inc.,

   Plaintiff,

v.                       Civil No. 08-1383 (JNE/FLN)
                          ORDER
International Wood, LLC; Sonak
Management LLC; Edward G. Gleason;
and Irwin A. Engelman,

   Defendants.

---

Philip R. Schenkenberg, Esq., Briggs and Morgan, P.A., appeared for Plaintiff Marquette Business Credit, Inc.

Curtis D. Ripley, Esq., Leonard, Street and Deinard, PA, appeared for Defendants International Wood, LLC; Sonak Management LLC; and Edward G. Gleason.

Charles K. Maier, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., appeared for Defendant Irwin A. Engelman.

---

   Marquette Business Credit, Inc. (Marquette), asserts claims for breach of contract and conversion against International Wood, LLC; Sonak Management LLC (Sonak); Irwin A. Engelman; and Edward G. Gleason. On September 15, 2009, Marquette moved for summary judgment on Counts I, III, IV, and V of its Complaint. On October 29, 2009, the Court granted summary judgment on Count I, which asserts a claim for breach of contract against International Wood, and deferred consideration of the remainder of the motion pending a Court-ordered settlement conference. Because the parties were unable to resolve their dispute at the settlement conference, the Court now considers Marquette's motion as to Counts III, IV, and V, which assert claims for breach of contract against Gleason, Engelman, and Sonak (collectively, Guarantors), respectively. The Guarantors oppose the motion on the ground that certain terms in

1

the contracts are ambiguous. For the reasons set forth below, the Court denies Marquette's motion as to Counts III, IV, and V.

I. BACKGROUND

International Wood was formed by Sonak and Engelman in 2005 to acquire and operate a factory in Texas that processed wooden slats for window coverings.[1] While in business, International Wood's largest customer was Hunter Douglas.

On August 9, 2007, Marquette and International Wood entered into a Loan and Security Agreement (Agreement) and Revolving Promissory Note by which Marquette agreed to finance International Wood's operations. The Agreement provided that Marquette would advance funds to International Wood in an amount derived from a "Borrowing Base," defined in relevant part as "eighty-five percent (85%) . . . of Eligible Accounts." The Agreement defined "Eligible Accounts" as:

> [A]ll accounts of [International Wood] which are deemed by [Marquette] in the exercise of its sole and absolute discretion to be eligible for inclusion in the calculation of the Borrowing Base . . . .  In no event shall Eligible Accounts include the following:
>
> . . .
>
> (m) that portion of the aggregate account balance . . . owed by Hunter Douglas which exceeds the Hunter Douglas Concentration Limit . . . .

Schedule A to the Agreement defined the "Hunter Douglas Concentration Limit" as "eighty percent (80%) of total accounts of [International Wood] that would have constituted Eligible Accounts but for clause (m) of the definition of 'Eligible Accounts.'"

In connection with the Agreement, the Guarantors executed Limited Guaranties that state:

---

[1] Gleason and his wife own Sonak.

2

> [The Guarantor] hereby unconditionally guarantees the full and prompt payment when due, whether by acceleration or otherwise, and at all times thereafter, of:
>
> (i) the amounts, if any, advanced by [Marquette] to [International Wood] under [the Agreement] . . . based upon the aggregate amount of accounts of [International Wood] with respect to which Hunter Douglas, Inc. is the Account Debtor that are included within Eligible Accounts as of such date, which were in excess of sixty percent (60%) of the total accounts of [International Wood] that would have constituted Eligible Accounts but for clause (m) of the definition of Eligible Accounts (the "<u>Hunter Douglas Excess Borrowing Amount</u>") . . . .
>
> Notwithstanding the foregoing or any other provision of this guaranty apparently to the contrary . . . the amount of the Guaranteed Liabilities shall be automatically fixed at the dollar value of the Hunter Douglas Excess Borrowing Amount that existed as of the close of business on the day upon which the Acceleration shall have occurred. Following an Acceleration, in no event shall the dollar value of the Guaranteed Liabilities be reduced by any payments or recoveries from [International Wood] or any other obligor primarily or secondarily obligated with respect to any of the Guaranteed Liabilities, other than payment in full of all amounts due and owing by [International Wood] under the [Agreement].

Marquette initially funded the loan in the amount of $5,612,707.29. After the initial funding, International Wood made payments and received additional draws on the loan. According to Gleason, International Wood discovered "at the end of 2007" that its accounts receivable were overstated and had been for "an extended period of time." Gleason attributes the overstatement to billing errors that occurred on Hunter Douglas accounts, and he states that International Wood "promptly" notified Marquette of the overstatement. On December 3, 2007, Marquette made its last advance to International Wood.

On December 19, 2007, Marquette sent International Wood a letter referencing a Notice of Default dated November 21, 2007. The letter also declared that the overstatement of the Hunter Douglas accounts receivable had caused the loan to be overadvanced. Marquette agreed in the December 19, 2007, letter to forbear from exercising its rights and remedies under the Agreement until January 14, 2008. Marquette extended its temporary forbearance on January 21,

3

2008, and again on February 13, 2008, in letters acknowledged by the Guarantors. The extensions included this sentence:

> By countersigning in the space indicated below, each Guarantor hereby acknowledges that, by his or its Limited Guaranty dated August 9, 2007, such Guarantor continues to guarantee the "Hunter Douglas Excess Borrowing Amount" (as defined in such Limited Guaranty) that existed immediately following the amounts advanced by [Marquette] on December 3, 2007.

International Wood failed to cure its default before the forbearance period expired, and Marquette accelerated the loan on March 26, 2008.

## II.  DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and it must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Contract interpretation is a question of law.[2] *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009). A court's role in interpreting a contract is to ascertain and

---

[2]  The Agreement and Limited Guaranties state that their construction is governed by Minnesota law.

4

give effect to the intention of the parties. *Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.*, 470 N.W.2d 118, 122-23 (Minn. 1991). A contract is ambiguous if, based on the language of the contract, it is reasonably susceptible to more than one interpretation. *Id.* at 123. "Where a written contract is unambiguous, the court must deduce the parties' intent from the language used. A party cannot alter unequivocal language of a contract with speculation of an unexpressed intent of the parties." *Id.* (citation omitted). When reviewing a contract, a court should attempt to harmonize all clauses of the contract. *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990). "It is generally recognized that summary judgment is not appropriate where the terms of a contract are at issue and any of its provisions are ambiguous or uncertain." *Donnay v. Boulware*, 144 N.W.2d 711, 716 (Minn. 1966).

**A.     Ambiguity**

The Guarantors maintain that summary judgment is inappropriate because the Hunter Douglas Excess Borrowing Amount cannot be calculated and because the meaning of "as of such date" in the definition of the Hunter Douglas Excess Borrowing Amount is ambiguous. The Hunter Douglas Excess Borrowing Amount depends on the amount of Eligible Accounts. The Guarantors contend that calculation of the Hunter Douglas Excess Borrowing Amount is impossible because the reference to the Hunter Douglas Concentration Limit in clause (m) of the definition of Eligible Accounts and the reference in the Hunter Douglas Concentration Limit back to clause (m) create a "clause (m) loop." Marquette responds with an explanation, based on an employee's affidavit, of how to calculate the Hunter Douglas Excess Borrowing Amount. As for the "as of such date" term, the Guarantors contend that the relevant date is the date of acceleration, while Marquette contends the relevant date is the date of the last advance under the Agreement.

The Court's review of the Agreement and Limited Guaranties indicates that the method of calculating Eligible Accounts and the amount excluded by the Hunter Douglas Concentration Limit cannot be determined from the contract language alone. In addition, the term "such date" in the definition of the Hunter Douglas Excess Borrowing Amount is not defined, and the contract language does not otherwise clarify the meaning of "as of such date." "[A]n ambiguous contract is an agreement which is obscure in its meaning, because of indefiniteness of expression, as where the contract employs a critical term which is not defined or there are terms missing, or because a double meaning is present." 11 Richard A. Lord, *Williston on Contracts* § 30:4 (4th ed. 2009) (footnotes omitted). Because the meaning of "as of such date" is obscure and the amount of the Hunter Douglas Excess Borrowing Amount is indeterminate, the Court concludes that the terms "as of such date" and "Hunter Douglas Excess Borrowing Amount" are ambiguous.

With respect to the term "as of such date," Marquette argues in the alternative that the extensions modified the Limited Guaranties to establish the date of the last advance as the relevant date when calculating the Hunter Douglas Excess Borrowing Amount. "[W]hether particular facts amount to modification of a contract is a question of law, while whether such facts are proved is a question of fact." *Cousineau v. Norstan, Inc.*, 322 F.3d 493, 496-97 (8th Cir. 2003) (applying Minnesota law). In *Cousineau*, the alleged modification was identified on a red-lined page of the contract, which was initialed by the parties to the contract. *Id.* at 495-96. The parties who initialed the red-lined page testified that the deletion of the clause at issue was intentional and intended to have binding effect. *Id.* at 497. Here, however, the Guarantors deny any intent to modify the Limited Guaranties in the manner asserted by Marquette. In addition, the definition of the Hunter Douglas Excess Borrowing Amount was set apart and underlined as

6

an important term in the Limited Guaranties, while the sentence in the extensions Marquette relies on are located in the middle of a paragraph and are not highlighted in any manner. Based on the record before it, the Court cannot conclude that the parties intended to modify an obviously important contract term in such a perfunctory manner. For these reasons, the Court denies summary judgment on Counts III, IV, and V.[3]

**B.    Trial Date**

Discovery in this matter closed on February 1, 2010.[4] The scheduling Order set a deadline of May 1, 2010, for the filing of dispositive motions and a trial-ready date of September 1, 2010. The Court's calendar would permit this case to be tried on May 3, 2010. Counsel are directed to inform the undersigned's Calendar Clerk, Sheri Frette, on or before Wednesday, March 10, 2010, whether they wish to avail themselves of the May 3, 2010, trial date.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Marquette's Motion for Partial Summary Judgment [Docket No. 98] is DENIED as to Counts III, IV, and V.

2. Counsel shall inform the undersigned's Calendar Clerk, Sheri Frette, on or before Wednesday, March 10, 2010, whether they wish to avail themselves of the May 3, 2010, trial date.

Dated:  March 3, 2010

                                                           s/  Joan N. Ericksen
                                                           JOAN N. ERICKSEN
                                                           United States District Judge

---

[3] The Guarantors also argued that summary judgment would be inappropriate because discovery was not complete when Marquette brought its motion. In light of the Court's conclusion that the contract terms are ambiguous, the Court does not reach this issue.

[4] The magistrate judge nevertheless granted Marquette until May 1, 2010, to depose Hunter Douglas pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.